**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ERVIN BERNARD EARL, | * | |
| # 07994-003, | * | |
| | * | |
| Petitioner, | * | |
| | * | CRIMINAL NO. 06-00136-WS-B |
| vs. | * | CIVIL ACTION NO. 20-00418-WS-B |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent. | * | |

<u>**REPORT AND RECOMMENDATION**</u>

Pending before the Court is Petitioner Ervin Bernard Earl's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 116). This matter has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings, and is now ready for consideration.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2] Upon consideration,

---

[1] United States District Judge William H. Steele presided over the proceedings in this action. The undersigned has reviewed Earl's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Steele.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record. <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989).

the undersigned hereby recommends that Earl's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 116) be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Ervin Bernard Earl.   The undersigned further recommends that in the event Earl requests a certificate of appealability and seeks to appeal *in forma pauperis,* said requests be **DENIED**.

I.   **BACKGROUND**

Petitioner Ervin Bernard Earl ("Earl") was indicted in June 2006 and charged with two counts of retaliating against a witness by attempting to kill the witness, in violation of 18 U.S.C. § 1513(a)(1) (Counts One and Two); two counts of retaliating against a witness by causing bodily injury, in violation of 18 U.S.C. § 1513(b) (Counts Three and Four); and one count of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Five).[3]   (Doc. 1). A jury found Earl guilty of all five charged counts, but its general verdict did not specify the predicate offense(s) for Count Five.   (See Docs. 23-1, 23-2).   In December 2006, the Court sentenced Earl to thirty years in prison, consisting of concurrent

---

[3] The predicate crimes of violence alleged in Count Five of the indictment were "the violations of Title 18, United States Code, Section 1513, as charged in Counts One, Two, Three and Four." (Doc. 1 at 3).

twenty-year terms as to Counts One through Three, a concurrent ten-year term as to Count Four, and a consecutive ten-year term as to Count Five.  (Doc. 30-1 at 2).

Earl appealed his convictions and sentences.  (Doc. 29). Earl's appointed counsel filed an Anders brief and moved to withdraw from further representation of Earl on direct appeal.[4] (Doc. 65 at 4-5).  On January 15, 2009, the Eleventh Circuit granted counsel's motion to withdraw and affirmed Earl's convictions and sentences.  (Id. at 5).

In August 2010, Earl filed an initial § 2255 motion raising issues not relevant here, which this Court denied on the merits in May 2011.[5]  (Docs. 86, 96, 97, 98).  In 2018, and again in 2019, Earl unsuccessfully sought leave to file successive § 2255 motions raising vagueness-based challenges to his § 924(c) conviction. (Doc. 111 at 3-4).

On June 24, 2019, the Supreme Court issued its decision in United States v. Davis, 139 S. Ct. 2319 (2019).  In Davis, the

---

[4] An Anders brief is filed by a defense attorney who seeks to withdraw from a case on appeal based on a belief that there are no meritorious issues to raise on appeal.  See Anders v. California, 386 U.S. 738, 744 (1967) ("[I]f counsel finds [the defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.  That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.").

[5] Earl had previously submitted § 2255 motions in January and March 2010, but those motions were unsigned.  (See Docs. 74, 80).

Supreme Court held that the definition of the term "crime of violence" in § 924(c)(3)(B)'s residual clause is unconstitutionally vague. <u>Davis</u>, 139 S. Ct. at 2336. Shortly thereafter, in a motion dated July 20, 2019, Earl moved this Court to appoint counsel to assist him in filing a § 2255 motion raising a claim based on <u>Davis</u>. (Doc. 108). This Court denied Earl's motion for appointment of counsel on August 26, 2019. (Doc. 110).[6]

On June 16, 2020, Earl filed yet another application for leave to file a successive § 2255 motion, in which he contended that the jury's general verdict left open the possibility that his § 924(c) conviction relied on the residual clause invalidated in <u>Davis</u>. (Doc. 118 at 26-32). Specifically, Earl argued that the jury may have relied only on the § 1513(b) violations charged in Counts Three and Four as the supporting predicates for Count Five, that violations of § 1513(b) do not qualify as crime of violence predicates under § 924(c)'s elements clause, and that his § 924(c) conviction therefore rests on the invalidated residual clause and must be set aside. (<u>Id.</u> at 29). Earl attached to his application a proposed § 2255 motion and supporting memorandum of law.[7] (<u>Id.</u> at 33-43).

---

[6] In the order denying appointment of counsel, the District Judge stated that it was "plain" that Earl was not sentenced under § 924(c)(3)(B)'s residual clause, and that Earl therefore had "no potentially valid <u>Davis</u> claim to pursue." (Doc. 110 at 2).

[7] In its June 26, 2020 order granting Earl's application for leave

On June 26, 2020, the Eleventh Circuit granted Earl's application for leave to file a successive § 2255 motion as to his <u>Davis</u> claim.  (Doc. 111).  In its order, the court stated:

> Here, Earl has made a *prima facie* showing that he is entitled to relief under <u>Davis</u>. . . . There is no precedent from the Supreme Court or this Court addressing whether violations of 18 U.S.C. § 1513(a)(1) and (b), the potential predicate offenses for his § 924(c) conviction, categorically qualify as crimes of violence under the elements clause of § 924(c)(3)(A). Earl has therefore made a *prima facie* showing that his claim satisfies the statutory criteria of § 2255(h)(2) on the basis that his § 924(c) conviction may be unconstitutional under <u>Davis</u>, as he potentially was sentenced under the now-invalid residual clause of § 924(c)(3)(B).

(Doc. 111 at 6).

Earl then filed the instant § 2255 motion and a supporting memorandum with this Court on August 12, 2020.[8]  (Docs. 116, 116-

---

to file a second or successive § 2255 motion, the Eleventh Circuit noted: "Earl also attached what appears to be his anticipated § 2255 motion, asserting a single claim under <u>Davis</u>, as well [as] a memorandum of law in support of the motion, which is addressed to the district court."  (Doc. 111 at 5).

[8] Under the mailbox rule, "a *pro se* prisoner's motion to vacate is deemed filed the date it is delivered to prison authorities for mailing." <u>Adams v. United States</u>, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam).  Absent evidence to the contrary, that date is presumed to be the date the prisoner signed the motion. <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam).  Earl's instant § 2255 motion is dated June 16, 2020, but Earl acknowledges that the motion was not delivered to prison officials for mailing to this Court until August 12, 2020.  Earl's instant § 2255 motion and supporting memorandum, which were filed on August 12, 2020, are *dated* June 16, 2020 because they are duplicates of the "anticipated" § 2255 motion and memorandum that Earl submitted to the Eleventh Circuit on that earlier date.  (<u>Compare</u> Docs. 116, 116-1, <u>with</u> Doc. 118 at 33-43; <u>see also</u> Doc.

1).   The Government filed a response in opposition (Doc. 118),
Earl filed replies (Docs. 121, 122), and his § 2255 motion is now
ripe for review.

## II.   HABEAS STANDARD

The limited scope of habeas relief is well established, as
this Court has recognized:

> Collateral relief is an extraordinary remedy which "may
> not do service for a[ ] [direct] appeal." United States
> v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed.
> 2d 816 (1982); see also Lynn v. United States, 365 F.3d
> 1225, 1232 (11th Cir. 2004) ("Courts have long and
> consistently affirmed that a collateral challenge, such
> as a § 2255 motion, may not be a surrogate for a direct
> appeal."). A defendant who has waived or exhausted his
> right to appeal is presumed to stand "fairly and finally
> convicted." Frady, 456 U.S. at 164. Unless a claim
> alleges a lack of jurisdiction or constitutional error,
> the scope of collateral attack has remained extremely
> limited. United States v. Addonizio, 442 U.S. 178, 185,
> 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently,
> "[i]f issues are raised and considered on direct appeal,
> a defendant is thereafter precluded from urging the same
> issues in a later collateral attack. . . . A defendant
> is, of course, entitled to a hearing of his claims, but
> not to duplicate hearings. The appellate process does
> not permit reruns." Moore v. United States, 598 F.2d
> 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008
WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

## III.  DISCUSSION

Earl's § 2255 motion contains a single ground for relief:
that his conviction under 18 U.S.C. § 924(c) is invalid and must

---

121 at 1 ("Petitioner submitted a duplicate §2255 and Memorandum
of Law on August 12, 2020 to the district court.")).

be vacated in light of the Supreme Court's holding in <u>Davis</u> that the definition of a crime of violence set forth in the residual clause of § 924(c)(3)(B) is unconstitutionally vague. (Doc. 116 at 4). Earl contends that the general verdict in his case, which did not specify the predicate offense for Count Five, makes it "impossible to tell" which witness retaliation offense or offenses the jury relied on as § 924(c) predicates. (Doc. 116-1 at 4). Given the multiple charged predicates and general verdict, Earl argues that the Court should assume that the jury relied on the least culpable of the alternative offenses, which he asserts are the § 1513(b) violations charged in Counts Three and Four. (Doc. 121 at 7). According to Earl, violations of § 1513(b) do not categorically qualify as crime of violence predicates under § 924(c)'s still-valid elements clause; thus, his § 924(c) conviction necessarily rests on the invalid residual clause. (Doc. 116-1 at 4).

 **A. Timeliness.**

The Court begins with the Government's argument that Earl's claim is time-barred pursuant to 28 U.S.C. § 2255(f). (<u>See</u> Doc. 118 at 7-11). Section 2255(f) provides as follows:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>
>    (1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

On June 24, 2019, the Supreme Court in <u>Davis</u> announced a new substantive rule of constitutional law retroactively applicable to cases on collateral review.  <u>See</u> <u>In re Hammoud</u>, 931 F.3d 1032, 1039 (11th Cir. 2019).  "At that moment, a new one-year limitations period began for all federal prisoners to file a § 2255 motion raising claims newly recognized in <u>Davis</u>."  <u>Thomas v. United States</u>, 2019 U.S. Dist. LEXIS 211056, at *5-6, 2019 WL 7484696, at *2 (S.D. Fla. Dec. 5, 2019) (citing 28 U.S.C. § 2255(f)(3)), <u>report and recommendation adopted</u>, 2020 U.S. Dist. LEXIS 1263, 2020 WL 59750 (S.D. Fla. Jan. 6, 2020).  Thus, Earl had one year from June 24, 2019 within which to timely file a § 2255 motion raising a <u>Davis</u> claim.

### i.  **Earl filed his § 2255 motion out of time.**

There is no question that Earl submitted an anticipated § 2255 motion and memorandum of law to the Eleventh Circuit along

with his application for leave to file a successive § 2255 motion on June 16, 2020.  (See Doc. 111 at 5; Doc. 118 at 33-43; see also Doc. 121 at 1).  There is also no question that Earl filed the instant § 2255 motion and supporting memorandum with this Court on August 12, 2020 by delivering those documents to prison authorities for mailing on that date.  (See Docs. 116, 116-1, 116-2).[9]

Earl argues that his motion is timely because he "filed his application for leave . . . to raise the instant challenge to his §924(c) conviction with the Eleventh Circuit on June 16, 2020, before the AEDPA's one year limitations period for Davis claims had expired."  (Doc. 121 at 2).  However, as noted, Earl did not file his § 2255 motion with this Court until August 12, 2020, nearly fourteen months after Davis was decided.  Contrary to Earl's suggestion, his submission of an "anticipated" or "proposed" § 2255 motion to the Eleventh Circuit did not amount to the filing of the § 2255 motion with this Court.  See In re Jackson, 826 F.3d 1343, 1348-49 (11th Cir. 2016) (recognizing that setting forth a claim in an application to the Eleventh Circuit for permission to

---

[9] As noted previously, the Eleventh Circuit stated that Earl had "attached what appears to be his anticipated § 2255 motion . . . as well [as] a memorandum of law in support of the motion," to his June 16, 2020 application for leave to file a successive § 2255 motion.  (Doc. 111 at 5).  Earl similarly characterizes those appellate court filings as "a proposed §2255 and Memorandum of Law[.]"  (See Doc. 121 at 1).  The instant § 2255 motion and supporting memorandum (Docs. 116, 116-1) are duplicates of the anticipated motion and memorandum filed with the Eleventh Circuit. (See Doc. 121 at 1).

file a successive § 2255 motion did not constitute the filing of a § 2255 motion raising that claim in the district court); United States v. Durden, 2017 U.S. Dist. LEXIS 231879, at *5-7, 2017 WL 10128909, at *2-3 (N.D. Ga. May 30, 2017) (holding that petitioner's filing of a document outlining his claims as an exhibit to an application to the Eleventh Circuit for leave to file a successive § 2255 motion did not constitute the filing of a § 2255 motion in the district court).  As the Government points out, § 2255(a) plainly states that a defendant "may move *the court which imposed the sentence* to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a) (emphasis added).

Given the foregoing, Earl's § 2255 motion was not deemed filed in this Court when he attached his anticipated motion to the application that he submitted to the Eleventh Circuit on June 16, 2020.  Instead, Earl's § 2255 motion was filed with this Court in August 2020, after the expiration of the one-year limitation period for Davis claims.  Thus, unless Earl can demonstrate that he is entitled to equitable tolling or another exception to the time bar, his claims are time-barred pursuant to § 2255(f)(3).

### ii. The Court assumes, without deciding, that equitable tolling is appropriate.

The statute of limitations set forth in 28 U.S.C. § 2255(f) may be equitably tolled in appropriate cases.  Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam); see

also Holland v. Florida, 560 U.S. 631, 645 (2010) (holding that a similar statute of limitations in 28 U.S.C. § 2244(d) is subject to equitable tolling).  "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Sandvik, 177 F.3d at 1271.  "Because equitable tolling is an extraordinary remedy, it is limited to rare and exceptional circumstances and typically applied sparingly."  Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam) (quotations omitted).  A petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland, 560 U.S. at 649 (quotation omitted).

Earl maintains that if the Court finds his motion to be untimely filed, he is nevertheless entitled to equitable tolling. Earl argues that he diligently pursued his rights by filing an application to file a successive § 2255 motion with the Eleventh Circuit on June 16, 2020, within the one-year limitation period for Davis claims, and subsequently forwarding "a copy of the completed §2255 and Memorandum of Law to the district court" in August 2020, upon receiving notice that he had been granted permission to file a successive § 2255 motion.  (Doc. 121 at 3).

Earl further asserts that the COVID-19 pandemic and the Bureau of Prisons' "extensive response effort to prevent and mitigate the spread of COVID-19 in its facilities" since March 2020 constitute extraordinary circumstances for equitable tolling purposes.  (Id. at 4).  According to Earl, his facility has been on institutional lockdown since the onset of the pandemic, affecting "the distribution of mail, access to legal materials, access to the law library, and being confined to his cell with only one hour to shower, use the phone, and sanitize his cell three days a week."[10] (Id.).  Earl states that he did not receive confirmation that the Eleventh Circuit had granted him permission to file a successive § 2255 motion until mid-July 2020, at which time he was without access to his legal materials because they were housed at the institutional law library, and that he was unable to retrieve his legal documents and submit his motion to prison staff for mailing until August 2020.  (Id.).

"[C]ourts have found that prisoners were entitled to equitable tolling when presented with evidence showing that the prisoners' diligent pursuit of their right to file a § 2255 motion had been interrupted by the COVID-19 pandemic."  United States v. Thomas, 2020 U.S. Dist. LEXIS 230048, at *6-7, 2020 WL 7229705, at *2 (E.D. La. Dec. 8, 2020).  Given that the Davis decision was rendered

---

[10] These assertions were made in Earl's reply brief dated October 26, 2020.  (Doc. 121).

months before the beginning of the COVID-19 pandemic, and that Earl did not apply for leave to file a successive § 2255 motion until June 16, 2020, it is highly questionable whether the facts in this case demonstrate that Earl was diligent in pursuing his rights and was prevented from timely filing by extraordinary circumstances.  For argument's sake, the Court will assume that equitable tolling is warranted, and that Earl's motion is therefore not time-barred.  However, for the reasons set forth below, Earl's claim is procedurally defaulted and fails on the merits.

**B.   Procedural Default.**

The Government argues that in addition to being untimely, Earl's <u>Davis</u> claim is procedurally defaulted because he failed to raise the claim before the trial court or on direct appeal.  (Doc. 118 at 11-13).  Earl counters that his claim is not procedurally defaulted because it is based on a new rule of law that was not available to him at trial or on direct appeal.  (Doc. 121 at 5-6).

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." <u>Lynn</u>, 365 F.3d at 1234.  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th

Cir. 1994) (per curiam).  When a defendant fails to pursue an available claim on direct appeal, the claim will not be considered in a § 2255 motion "unless he can either (1) show cause to excuse the default and actual prejudice from the claimed error, or (2) show that he is actually innocent of the § 924([c]) conviction." Granda v. United States, 990 F.3d 1272, 1286 (11th Cir. 2021).

"To show cause, a defendant must prove that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim previously." Lynn, 365 F.3d at 1235 n.20 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  "[W]here a constitutional claim is so novel that its legal basis [was] not reasonably available to counsel," a defendant has cause for his failure to previously raise the claim.  Reed v. Ross, 468 U.S. 1, 16 (1984); United States v. Bane, 948 F.3d 1290, 1296-97 (11th Cir. 2020). "That an argument might have less than a high likelihood of success has little to do with whether the argument is available or not. An argument is available if there is a reasonable basis in law and fact for it."  Granda, 990 F.3d at 1286 (quotation omitted). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was available at all."  Id. (quotation omitted).

To establish novelty sufficient to provide cause based on a new constitutional principle, a petitioner "must show that the new rule was a sufficiently clear break with the past, so that an

attorney representing [him] would not reasonably have had the tools for presenting the claim." Id. (quotation omitted).  In Reed, the Supreme Court identified three circumstances in which novelty might constitute cause to excuse the default of a claim.  See Reed, 468 U.S. at 17.  First, when a Supreme Court decision explicitly overrules one of its precedents, cause exists to excuse default of a claim based on the new decision.  Id.  Second, cause exists when a Supreme Court decision overturns "a longstanding and widespread practice to which [the Supreme] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved."  Id.  Third, cause may exist where a decision disapproves of "a practice [the Supreme] Court arguably has sanctioned in prior cases."  Id.

Although cases falling into one of the first two categories will satisfy the cause requirement, cases falling into the third category present a more complicated question, requiring courts to "analyze whether others were recognizing and raising the same or similar claims in the period preceding or concurrent with the petitioner's failure to raise his claim."  Granda, 990 F.3d at 1286-87 (quotation omitted).  "[E]ven if others have not been raising a claim, the claim may still be unnovel if a review of the historical roots and development of the general issue involved indicate that petitioners did not lack the tools to construct their constitutional claim."  Id. at 1287 (quotations omitted); see also

_Reed_, 468 U.S. at 17-18 ("Whether an attorney had a reasonable basis for pressing a claim challenging a practice that this Court has arguably sanctioned depends on how direct this Court's sanction of the prevailing practice had been, how well entrenched the practice was in the relevant jurisdiction at the time of defense counsel's failure to challenge it, and how strong the available support is from sources opposing the prevailing practice."). The Eleventh Circuit has held that a _Davis_ claim, such as the one Earl raises in the instant § 2255 motion, "fits most neatly into this third category." _Granda_, 990 F.3d at 1287.

In _Granda_, the Eleventh Circuit considered whether a § 2255 petitioner could establish cause to overcome his failure to challenge the constitutionality of § 924(c)'s residual clause on vagueness grounds before the trial court or on direct appeal by showing that the claim's legal basis was not reasonably available at that time.[11] _See id._ at 1286-88. The _Granda_ court noted that the Supreme Court, in _James v. United States_, 550 U.S. 192, 210 n.6 (2007), _overruled in part by Johnson v. United States_, 576 U.S. 591 (2015), "had directly rejected the argument" that a similar residual clause in the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. _Granda_, 990 F.3d at 1287. However,

---

[11] The Eleventh Circuit affirmed Granda's convictions and sentences on direct appeal on September 29, 2009. _See United States v. Granda_, 346 F. App'x 524 (11th Cir. 2009) (per curiam).

the court pointed out that "James did not consider the § 924(c) residual clause at all" and in fact "indicated that at least three Justices were interested in entertaining vagueness challenges to the ACCA's residual clause, and perhaps to similar statutes." Id. The court cited cases showing that "other defendants did challenge the ACCA's residual clause on vagueness grounds after James (but before Johnson)" and reasoned that "if James did not deprive litigants of the tools to challenge even the ACCA's residual clause on vagueness grounds, it surely did not deprive them of the tools to challenge the § 924(c) residual clause, a clause to which James did not even apply." Id. It also cited cases showing that "due process vagueness challenges to criminal statutes were commonplace" prior to the conclusion of the petitioner's appeal. Id. at 1287-88. Against this backdrop, the Eleventh Circuit concluded that the petitioner did not lack the tools necessary to raise a due process vagueness challenge to the § 924(c) residual clause; thus, he could not show cause to excuse his procedural default. Id. at 1288; see Parker v. United States, 993 F.3d 1257, 1265 (11th Cir. 2021) ("Granda held that a vagueness-based challenge to the § 924(c)(3)(B) residual clause was not sufficiently novel to establish cause[.]").

As noted supra, Earl's trial took place in 2006, and like the petitioner in Granda, his direct appeal was resolved in 2009. (See Docs. 23, 65). In light of the binding precedent in Granda, Earl

cannot establish that his challenge to his § 924(c) conviction based on the unconstitutional vagueness of § 924(c)(3)(B)'s residual clause was not reasonably available to counsel at the time of his direct appeal. Thus, Earl cannot show cause to excuse the procedural default of his claim.

Assuming *arguendo* that Earl could demonstrate cause, his procedural default would not be excused because he cannot show prejudice. To establish prejudice, Earl would have to prove that he "suffered actual prejudice, not merely the possibility of prejudice." Bane, 948 F.3d at 1297 (quotation omitted). The error must have been one of "constitutional dimensions" and must have worked to Earl's "actual and substantial disadvantage." Id. As discussed in detail below, Earl has failed to show prejudice because he has not shown a "substantial likelihood" that the jury relied solely on an invalid predicate crime of violence in convicting him under § 924(c). See Granda, 990 F.3d at 1288; Herron v. United States, 2020 U.S. Dist. LEXIS 226447, at *13, 2020 WL 7074640, at *5 (S.D. Fla. Dec. 3, 2020) ("Movant has not met his burden to show the jury more likely than not convicted based solely on the invalid predicate, and so he fails to establish prejudice.").

Given Earl's inability to establish both cause and prejudice, the only way he could avoid procedural default would be to establish that he is actually innocent of the § 924(c) offense.

To demonstrate actual innocence of the § 924(c) offense, Earl would have to demonstrate the likelihood that no reasonable juror would have concluded that he used a firearm during and in relation to, or possessed a firearm in furtherance of, any valid predicate crime of violence.  See Granda, 990 F.3d at 1292.  Earl does not argue that he did not use a firearm in the shooting of a witness.  Therefore, much like the petitioner in Granda, any actual innocence argument for Earl "rises and falls with the merits" of his argument that his § 924(c) conviction is based on a crime that qualified as a predicate crime of violence only under § 924(c)'s invalidated residual clause.  See id.  As explained in the section below, Earl cannot show a likelihood that his § 924(c) conviction was based on an invalid predicate.  Since Earl is not able to show cause and prejudice, or actual innocence, he cannot overcome his procedural default.

**C.   Merits.**

Even assuming *arguendo* that Earl's claim faced no procedural barriers, it would nevertheless fail on the merits.  Under § 2255, it is the petitioner's burden to show by a preponderance of the evidence that he is entitled to relief.  Beeman v. United States, 871 F.3d 1215, 1222 (11th Cir. 2017).  To prove a Davis claim, a petitioner "must establish that the residual clause actually adversely affected the sentence he received, not simply that it may have done so."  Martinez v. United States, 2020 U.S. Dist.

LEXIS 94827, at *9, 2020 WL 2839442, at *4 (M.D. Fla. June 1, 2020). Thus, Earl is entitled to relief only if he can show the likelihood that the jury's guilty verdict in Count Five relied solely on a predicate offense that did not qualify as a crime of violence under § 924(c)'s elements clause. See In re Cannon, 931 F.3d 1236, 1243 (11th Cir. 2019) (per curiam) ("Cannon, as the movant, still bears the burden of proving the likelihood that the jury based its verdict of guilty in Count 3 solely on the [invalid predicate offense], and not also on one of the other valid predicate offenses identified in the count[.]").

Section 924(c)(1)(A) imposes a five-year mandatory consecutive term of imprisonment for "any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." See 18 U.S.C. § 924(c)(1)(A)(i). The minimum sentence rises to ten years if, like Earl, the defendant discharges the firearm. See id. at § 924(c)(1)(A)(iii). The statute defines the term "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." United States v.

_Bates_, 960 F.3d 1278, 1285 (11th Cir. 2020) (quoting 18 U.S.C. § 924(c)(3)(A)).[12]

To determine whether an offense qualifies as a crime of violence under § 924(c)'s elements clause, courts employ either the "categorical approach" or the "modified categorical approach," depending on the nature of the offense. See _id._ at 1286. Courts must apply the traditional categorical approach when the predicate offense statute "sets out a single (or 'indivisible') set of elements to define a single crime." _Mathis v. United States_, 136 S. Ct. 2243, 2248 (2016). "Under this approach, courts compare the elements of the crime to the statutory definition, looking only to the elements of the predicate offense statute and not at the particular facts of the defendant's offense conduct." _Bates_, 960 F.3d at 1286 (quotations omitted). If the statutory elements of the predicate offense do not necessarily require, at a minimum, the threatened or attempted use of force, then the offense does not constitute a crime of violence under the elements clause. See _Brown v. United States_, 942 F.3d 1069, 1075 (11th Cir. 2019) (per curiam).

---

[12] Section 924(c)(3)(B), known as the residual clause, provides an alternative definition of a crime of violence, but the Supreme Court in _Davis_ declared that clause's definition of a crime of violence to be unconstitutionally vague. See _Davis_, 139 S. Ct. at 2336. Therefore, an offense can only qualify as a § 924(c) predicate crime of violence if it meets the definition set forth in § 924(c)(3)(A)'s elements clause. _Bates_, 960 F.3d at 1285.

The modified categorical approach is simply a "tool" for implementing the categorical approach when the predicate offense statute is divisible, meaning that it lists elements in the alternative and thereby defines multiple distinct crimes. George v. U.S. Att'y Gen., 953 F.3d 1300, 1303-04 (11th Cir. 2020) (quoting Descamps v. United States, 570 U.S. 254, 263 (2013)). Under the modified categorical approach, courts may look beyond the predicate offense statute to a limited class of documents (such the indictment and jury instructions) to determine which of the statute's alternative elements formed the basis for the defendant's conviction. Bates, 960 F.3d at 1286. Once it is determined which divisible portion of the statute the defendant was convicted under, courts then apply the traditional categorical approach to that statutory phrase to determine whether the elements of that offense necessarily require, at a minimum, the threatened or attempted use of force. See Greer v. United States, 749 F. App'x 887, 892 (11th Cir. 2018) (per curiam); Brown, 942 F.3d at 1075.

Earl reasons that because the general verdict does not specify which predicate offense(s) the jury relied on to find him guilty under § 924(c), the Court should assume that the jury rested its conclusion on the least culpable of the alternative offenses, which Earl contends are the § 1513(b) violations charged in Counts Three and Four. (Doc. 116-1 at 4-5; Doc. 121 at 7). However, the

Eleventh Circuit has considered and rejected Earl's suggested proposition "that a court is constrained to assume the verdict rested on the least culpable predicate offense." See Granda, 990 F.3d at 1295-96; see also Calderon v. United States, 811 F. App'x 511, 516 (11th Cir. 2020) (per curiam) ("[T]his Court has only applied the 'least culpable offense' rule when determining whether an offense qualifies as a crime of violence, not when determining which crime of violence underlies a defendant's § 924(c) conviction."). Instead of assuming that a defendant's § 924(c) conviction rested on the least culpable predicate, "it is proper to look at the record" to determine whether an invalid predicate actually led to a defendant's § 924(c) conviction "or whether the jury instead (or also) found the defendant guilty under a valid theory." Granda, 990 F.3d at 1294.

The record in this case establishes an overwhelming likelihood that the jury based its guilty verdict in Count Five on *all four* predicate witness retaliation offenses, including the § 1513(a)(1) violations charged in Counts One and Two and the § 1513(b) violations charged in Counts Three and Four. As noted *supra*, Count Five of Earl's indictment conjunctively alleged four predicate crimes of violence, "to wit: the violations of Title 18, United States Code, Section 1513, as charged in Counts One, Two, Three and Four." (Doc. 1 at 3). Those four witness retaliation offenses were based on a single event, namely, Earl's shooting of

Eddie Savage on May 10, 2006, in retaliation for Savage providing information and testifying against Earl's brother, Demetrius Richardson. (See id. at 1-3).

With regard to the § 924(c) offense charged in Count Five, the jury instructions stated, in relevant part:

> Title 18, United States Code, Section 924(c)(1), makes it a separate federal crime or offense for anyone to use or carry a firearm during and in relation to a crime of violence, or to possess a firearm in furtherance of a crime of violence. The Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:
>
> > First: That the Defendant committed the crime of violence charged in Count One, Two, Three or Four of the indictment;
> >
> > Second: That during the commission of that offense the Defendant knowingly used, carried or possessed a firearm, as charged; and
> >
> > Third: That the Defendant used or carried the firearm in relation to the crime of violence or possessed the firearm in furtherance of the crime of violence.

(Doc. 28-1 at 29-30).

The jury returned a general verdict, finding Earl guilty on all five charged counts. (See Doc. 23-1). Although the general verdict did not specify which offense or offenses the jury relied on as the predicate § 924(c) crimes of violence, the predicate witness retaliation offenses were inextricably intertwined, each stemming from Earl's shooting of Eddie Savage in retaliation for Savage providing information and testifying against Earl's

brother.  As each of Earl's § 924(c) predicate offenses (charged in Counts One through Four) arose from this single act, it is inconceivable that a rational juror could have found that Earl used a firearm in relation to one predicate offense but not the others.  See United States v. Cannon, 987 F.3d 924, 948 (11th Cir. 2021) (rejecting defendants' argument that general verdict made it impossible to determine whether the jury based their § 924(c) convictions on an invalid Hobbs Act conspiracy predicate rather than a valid cocaine conspiracy predicate, because the trial record made "clear that the two predicate conspiracy crimes were so inextricably intertwined that no rational juror could have found that [defendants] carried a firearm in relation to one predicate and not the other"); Granda, 990 F.3d at 1291 ("The tightly bound factual relationship of the predicate offenses precludes Granda from showing a substantial likelihood that the jury relied solely on Count 3 to predicate its conviction on Count 6."); Foster v. United States, 996 F.3d 1100, 1109 (11th Cir. 2021) ("Foster's predicate offenses were inextricably intertwined so that if the jurors found one applicable -- and we know they did since they found Foster guilty of Counts 4 and 5 -- they necessarily arrived at the same conclusion with respect to the other predicate offenses.").

Because it is virtually certain that Earl's § 924(c) conviction rests on his violations of § 1513(a)(1) *and* § 1513(b),

Earl can only prevail on his _Davis_ claim if *none* of those predicate offenses categorically qualify as crimes of violence under the elements clause of § 924(c). Admittedly, "[t]here is no precedent from the Supreme Court or [the Eleventh Circuit Court of Appeals] addressing whether violations of 18 U.S.C. § 1513(a)(1) and (b), the potential predicate offenses for [Earl's] § 924(c) conviction, categorically qualify as crimes of violence under the elements clause of § 924(c)(3)(A)." (Doc. 111 at 6). Nevertheless, having reviewed the authority applicable to this issue, the undersigned finds that Earl's _Davis_ claim must fail.

As an initial matter, a review of the predicate offense statute is in order. 18 U.S.C. § 1513 provides, in relevant part:

> (a)(1) Whoever kills or attempts to kill another person with intent to retaliate against any person for—
>
> (A) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or
>
> (B) providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings,
>
> shall be punished as provided in paragraph (2).
>
> . . . .
>
> (b) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for—

> (1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or
>
> (2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer;

or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1513(a)-(b).

Turning first to § 1513(a)(1), it is noteworthy that Earl makes no attempt to argue that retaliation against a witness by killing or attempted killing is not a crime of violence under § 924(c)(3)(A)'s elements clause. Indeed, this Court has already determined *in this case* that "conviction under [§ 1513(a)(1)] requires as an element that the defendant use, or attempt to use, lethal force against the person of another" and that it is "therefore plain that [Earl] was sentenced under the [elements] clause and not the residual clause." (Doc. 110 at 2) (citing In re Irby, 858 F.3d 231, 238-39 (4th Cir. 2017) ("[S]econd-degree retaliatory murder [in violation of Section 1513(a)(1)] is a crime of violence under the force clause of § 924(c).")). This accords with the holding of at least one other district court in this circuit that witness retaliation by attempted killing in violation of § 1513(a)(1) is a crime of violence under § 924(c)'s elements

clause because "§ 1513(a)(1)'s element of killing or attempting to kill another requires the use, attempted use, or threatened use of physical force." Hammoud v. United States, 2020 U.S. Dist. LEXIS 110205, at *13-15, 2020 WL 3440649, at *5-6 (M.D. Fla. June 23, 2020); cf. Hylor v. United States, 896 F.3d 1219, 1223 (11th Cir. 2018) ("Attempted murder, which the Supreme Court has called a 'prototypically violent crime,' is a violent felony under the [ACCA].") (internal citation omitted). Because retaliation against a witness in violation of § 1513(a)(1) (as charged in Counts One and Two) meets the definition of a crime of violence under § 924(c)'s elements clause, Earl's Davis claim is due to be denied.

Even assuming *arguendo* that Earl's § 924(c) conviction was predicated solely on his § 1513(b) violations (as charged in Counts Three and Four), it is doubtful that § 924(c)'s residual clause would be implicated. In addressing the similar question of whether retaliation against a witness by bodily injury constitutes a violent felony under the ACCA's elements clause, the Fourth Circuit found that § 1513(b)(1) is a divisible statute because it "easily divides into four separate general offenses: (1) engaging in conduct that causes bodily injury, (2) threatening to engage in conduct that causes bodily injury, (3) engaging in conduct that damages tangible property, and (4) threatening to engage in conduct that damages tangible property." United States v. Allred, 942

F.3d 641, 649 (4th Cir. 2019), <u>cert. denied</u>, 140 S. Ct. 1235
(2020); <u>see also</u> <u>United States v. Harris</u>, 323 F. Supp. 3d 1065,
1070 (E.D. Wis. 2018) (finding that § 1513(b) "satisfies the
demands of the categorical approach," but finding it more probable
that "the modified categorical approach would be applicable, as
Section 1513(b) defines three ways to commit witness retaliation,
not three means by which to satisfy one element of that offense");
<u>Fenderson v. United States</u>, 2021 U.S. Dist. LEXIS 77088, at *13,
2021 WL 1535821, at *6 (S.D. Ill. Mar. 15, 2021) (finding that "§
1513(b) is a divisible statute, rendering the modified categorical
approach appropriate"), <u>reconsideration denied</u>, 2021 U.S. Dist.
LEXIS 74497, 2021 WL 1529935 (S.D. Ill. Apr. 19, 2021).  Having
determined that § 1513(b)(1) is a divisible statute, the Fourth
Circuit applied the modified categorical approach to determine
which of the alternative crimes set forth in § 1513(b)(1) formed
the basis for the defendant's conviction.  <u>Allred</u>, 942 F.3d at
652.  After reviewing the indictment, which revealed that the
defendant was "found guilty of the bodily injury variant of §
1513(b)(1)," the court examined whether that offense categorically
qualified as a violent felony under the ACCA's elements clause.
<u>Id.</u>  The Fourth Circuit concluded that the defendant's "conviction
under § 1513(b)(1), which requires knowing conduct that causes
bodily injury to another, categorically involves the 'use' of

'violent force' sufficient to bring it within ACCA's elements clause." Id. at 655.

Although Allred dealt with § 1513(b)(1), the same rationale applies to a violation of § 1513(b)(2). Employing the approach used by the Fourth Circuit in Allred to Earl's § 1513(b) violations, there is no question that Earl was found guilty of the bodily injury variants of §§ 1513(b)(1) and (2), and that those offenses categorically require, at a minimum, the threatened or attempted use of force and therefore qualify as crimes of violence under the elements clause of § 924(c)(3)(A). See United States v. Bowen, 936 F.3d 1091, 1103 (10th Cir. 2019) ("We easily conclude that witness retaliation through bodily injury qualifies as a crime of violence under § 924(c)(3)'s elements clause."); Fenderson, 2021 U.S. Dist. LEXIS 77088, at *17-20, 2021 WL 1535821, at *7-8 (applying the reasoning of Allred to a violation of § 1513(b)(2) and finding that a conviction for causing bodily injury under the statute qualifies as a crime of violence under § 924(c)'s elements clause); but see Bowen, 936 F.3d at 1102 & n.5 (10th Cir. 2019) (assuming without deciding that § 1513(b)(2) is indivisible because neither party argued that the statute was divisible, and therefore applying the pure categorical approach, rather than the modified categorical approach, in determining whether § 1513(b)(2) conviction qualified as crime of violence under § 924(c)'s elements clause).

In summary, Earl cannot show that his Count Five conviction turned on the validity of the residual clause.  The record indicates that the jury relied on all four of Earl's predicate witness retaliation offenses in finding him guilty of violating § 924(c), and Earl makes no argument which calls into question this Court's earlier finding that his convictions under Counts One and Two for violations of § 1513(a)(1) constitute crimes of violence under § 924(c)'s elements clause.  Moreover, persuasive authority suggests that Earl's convictions under Counts Three and Four for violations of § 1513(b) also qualify as crimes of violence under the elements clause.  Accordingly, Earl's <u>Davis</u> claim is due to be denied.

## IV. <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**.  <u>See</u> 28 U.S.C. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c)(1).  A certificate of appealability may be issued only where "the

applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

Where a habeas petition is dismissed on procedural grounds without reaching the merits of an underlying constitutional claim, a certificate of appealability "should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability may issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal citation and quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

After reviewing the issues presented in light of the applicable standards, the Court concludes that reasonable jurists would not find debatable the Court's disposition of Earl's claim, and that none of the issues presented are adequate to deserve encouragement to proceed further. As a result, Earl is not entitled to a certificate of appealability and, consequently, he should not be permitted to proceed *in forma pauperis* on appeal.

### V. CONCLUSION

For the foregoing reasons, it is recommended that Petitioner Ervin Bernard Earl's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 116) be **DENIED,** that this action be **DISMISSED with prejudice,** and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Ervin Bernard Earl. It is further recommended that any requests for a certificate of appealability or for permission to appeal *in forma pauperis* be **DENIED.**

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a]

party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **30th** day of **December, 2021.**

       **/s/ SONJA F. BIVINS**
       **UNITED STATES MAGISTRATE JUDGE**