# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )    CRIMINAL NO. 06-0136-WS |
| | ) |
| ERVIN BERNARD EARL, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc.147). After careful consideration, the Court concludes that the motion is due to be denied.

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ….

18 U.S.C. § 3582(c)(1)(A).

Relief under this provision, known as "compassionate release," thus requires satisfaction of four elements: (1) a proper motion; (2) a finding that extraordinary and compelling reasons for such relief exist; (3) a finding of consistency with Sentencing Commission policy statements; and (4) favorable consideration of the Section 3553(a) factors.

## I. Proper Motion.

"[I]n order properly to exhaust, an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau [of Prisons] as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7ᵗʰ Cir. 2021).[1]  In this Court, the defendant presents two grounds for compassionate release:  (1) the incapacitation of his grandmothers and aunt; and (2) errors of law/changes in the law regarding his conviction and sentencing.  (Doc. 147 at 7-11).  The defendant properly submitted the first ground to his warden, (Doc. 147-1 at 1-2), but not the second.  The defendant's submission to his warden references U.S.S.G. § 1B1.13(b)(6), but it states only that the defendant has served over ten years of his sentence, without identifying any alleged legal error or change in the law.  (*Id*. at 1).  The defendant's second challenge therefore fails to satisfy the first requirement for relief.

## II. Extraordinary and Compelling Reason.

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).  The Sentencing Commission has done so.  U.S.S.G. § 1B1.13.  The extraordinary and compelling reasons listed therein are the only ones that can support compassionate release, and district courts lack power to develop others.  *United States v. Bryant*, 996 F.3d 1243, 1247-48, 1264-65 (11ᵗʰ Cir. 2021).

---

[1] This Court has previously reached the same conclusion.  *United States v. Young*, 2022 WL 1487389 at *2 (S.D. Ala. 2022); *see also United States v. Lopez*, 2024 WL 1979437 at *1 n.3 (S.D. Ala. 2024) (collecting cases).

### A. Incapacitation.

An extraordinary and compelling reason for a reduced sentence exists upon "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). An extraordinary and compelling reason likewise exists if "[t]he defendant establishes that circumstances similar to that listed in paragrap[h] ... (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual." *Id*. § 1B1.13(b)(3)(D).

A grandmother counts as an "immediate family member," but an aunt does not. U.S.S.G § 1B1.13(b)(3)(D). However, an aunt could be shown to be "an individual whose relationship with the defendant is similar in kind to that of" an immediate family member such as a parent, grandparent, or sibling. *Id*. The defendant states that his aunt has "always provided for him in multiple ways since a child," including a place to stay when on parole, probation, or house arrest. (Doc. 147 at 8). The Court assumes, for present purposes only, that the aunt may fall within subsection (b)(3)(D).

As the Court has recently noted, "incapacitation" has been construed to require that "the relative is completely disabled, is unable to carry on any self-care, and is confined to a bed or chair." *United States v. Taylor*, 2024 WL 1538419 at *2 (S.D. Ala. 2024). The defendant states that his aunt has stage 4 lung cancer, (Doc. 147 at 7-8), but he provides no evidence to establish either her diagnosis or her inability to care for herself. The defendant states that one grandmother has a rare form of Alzheimer's, (*id*. at 8), but the only evidence he provides shows only that, during an extended June 2024 hospital stay, she "presented overnight with altered mental status," (Doc. 147-1 at 3), without any indication that her apparent confusion on that specific date continued thereafter and up to the present. As for his other grandmother, the defendant states only that two family members caring for her have died this year, without identifying her

medical or mental condition or any limitations they impose. (Doc. 147 at 7-8). In short, the defendant has not established that any of his relatives is "incapacitated" within the contemplation of Section 1B1.13(b)(3).

Nor has the defendant shown that he would be the "only available caregiver" for any of his relatives. Although he declares in his brief that he is the "sole caregiver" for them, (Doc. 147 at 8), barely one month ago he told his warden that he would be merely their "primary," not exclusive, caregiver. (Doc. 147-1 at 2). In addition, the defendant has not explained why every one of the many family members whose existence is disclosed by the record are less available than he to care for his aunt and grandmothers. (Doc. 27 at 17 (three local siblings, who would now range in age from 27 to 36); Doc. 147 at 9 (his own daughter, who will graduate (presumably from high school) in 2025); Doc. 147-1 at 3 (grandson living with one grandmother)). Finally, the defendant has not accounted for other offspring of his aunt and grandmothers.

### B. Unusually Long Sentence.

As of November 2023, the following may provide an extraordinary and compelling reason for compassionate release:

> UNUSUALLY LONG SENTENCE. – If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

This provision includes the following requirements: (1) that the defendant have received an "unusually long sentence"; (2) that the defendant have "served at least 10 years of the term of imprisonment"; (3) that there have been a "change in the law"; and (4) that the change "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." If all those circumstances exist, the change in the law "may be considered in determining whether the defendant presents an extraordinary and

compelling reason, but only … after full consideration of the defendant's individualized circumstances."

The defendant was indicted on five counts, all based on the identical conduct:  (1) attempting to kill one Eddie Savage in retaliation for his attendance and testimony at an official proceeding (a grand jury considering the criminal case of *United States v. Demetrius Richardson*), in violation of 18 U.S.C. § 1513(a)(1)(A); (2) attempting to kill Savage in retaliation for his providing information to a law enforcement officer relating to the possible commission of a federal offense, in violation of 18 U.S.C. § 1513(a)(1)(B); (3) causing bodily injury to Savage by shooting him in retaliation for his attendance and testimony at an official proceeding, in violation of 18 U.S.C. § 1513(b)(1); (4) causing bodily injury to Savage by shooting him in retaliation for his providing information to a law enforcement officer relating to the possible commission of a federal offense, in violation of 18 U.S.C. § 1513(b)(2); and (5) knowingly using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).  (Doc. 1).  A jury convicted the defendant on all five counts.  (Doc. 23-1).

Because the maximum sentence for an offense charged in the *Richardson* case was life imprisonment, the statutory maximum sentence for Counts I and III was life imprisonment.  18 U.S.C. § 1513(c).  (Doc. 27 at 20).  The statutory maximum sentence for Count II was 20 years.  18 U.S.C. § 1513(a)(2)(B).[2]  (Doc. 27 at 20).  The statutory maximum sentence for Count IV was 10 years.  18 U.S.C. § 1513(b)(2).[3]  (Doc. 27 at 20).  The base statutory minimum sentence under Section 924(c)(1)(A) is five years, but if the firearm is discharged, the statutory minimum sentence rises to ten years.  18 U.S.C. § 924(c)(1)(A)(iii).

The defendant's guideline range on each count was 121 to 151 months.  (Doc. 27 at 20).  As to Counts I, II, and III, the Court departed upward from the guideline range, imposing concurrent sentences of 240 months.  As to Count IV, the Court imposed a concurrent sentence

---

[2] This statutory maximum is currently 30 years.

[3] This statutory maximum is currently 20 years.

of 120 months.  As to Count V, the Court imposed a consecutive sentence of 120 months.  (Doc. 30 at 2).

The defendant's briefing is imprecise but, generously construed, he appears to make three arguments:  (1) his sentence on Count III was improperly "enhanced" beyond the statutory maximum; (2) his sentence on Count V was unconstitutionally raised from five years to ten years without a jury finding that he discharged a firearm; and (3) because the jury did not specify which of Counts I through IV constituted the "crime [or crimes] of violence" for purposes of Count V, it must be assumed that the jury relied only on Count III and/or Count IV, which are no longer crimes of violence for purposes of Section 924(c).  (Doc. 147 at 9-11, 15).

## 1. Count III.

According to the defendant, he "was enhanced on Count Three for double the maximum sentence prescribed for 18 U.S.C. § 1513(b)(2) which carries a maximum sentence of 10 years but Petitioner was sentenced to 20 years."  (Doc. 147 at 10).  Count III, however, charged a violation of Section 1513(b)(1), not Section 1513(b)(2), and the statutory maximum for the defendant's violation of Section 1513(b)(1) was, as noted previously, life imprisonment.[4]  The defendant's 20-year sentence on Count III did not exceed the statutory maximum.

In any event, relief under Section 1B1.13(b)(6) must be based on a post-sentencing "change in the law."  The defendant does not argue that the law has changed but only that the Court erred under the law as it stood at the time of sentencing.  "[T]he alleged illegality of [a] conviction and ... sentence is not a qualifying basis for compassionate release."  *United States v. Tweed*, 2023 WL 2755602 at *2 (11th Cir. 2023).  The Court did not err but, even had it done so, Section 1B1.13(b)(6) would provide no avenue for relief.

## 2. Discharge.

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

---

[4] The defendant conceded the point at sentencing.  (Doc. 27 at 20; Doc. 41 at 3).

reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). At the time of the defendant's trial and sentencing, the Supreme Court had ruled that *Apprendi* applies only to facts triggering a statutory maximum, not to facts triggering a statutory minimum. *Harris v. United States*, 536 U.S. 545, 568-69 (2002); *accord id*. at 565 ("The judge may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those juries - and without contradicting *Apprendi*.").

Long after the defendant's trial and sentencing, the Supreme Court overruled *Harris* and substituted this rule: "[A]ny fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne v. United States*, 570 U.S. 99, 102 (2013). *Alleyne* involved a sentence imposed under Section 924(c)(1)(A)(ii), which requires a minimum seven-year sentence if the firearm is brandished. The defendant correctly identifies *Alleyne* as a "change in the law" for purposes of Section 1B1.13(b)(6). (Doc. 147 at 10). Applying *Alleyne*, however, would not "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."

The only arguable *Alleyne* error in this case is the failure to submit to the jury a special interrogatory asking whether the government had proved beyond a reasonable doubt that the defendant discharged the firearm during the commission of the other offenses. "*Alleyne* violations are subject to harmless error review." *United States v. King*, 751 F.3d 1268, 1279 (11th Cir. 2014). An *Alleyne* error is harmless when "it is clear beyond a reasonable doubt that a rational jury would have found [the defendant] guilty of brandishing [or, in this case, discharging] a firearm absent the *Alleyne* error." *Id*. at 1279-80; *accord United States v. Payne*, 763 F.3d 1301, 1304 (11th Cir. 2014). The entire and exclusive basis of the prosecution was that the defendant had shot the defendant, and even defense counsel in closing argument conceded, as he had to, that Savage had been shot, questioning only the identity of the shooter. (Doc. 50 at 28-29). Given the evidence and the government's theory, the jury by its verdict necessarily found beyond a reasonable doubt that the defendant discharged the firearm. This case therefore is stronger even than *King* and *Payne*, which each held, on a weaker evidentiary record, that the jury, had it been asked, *would have found* beyond a reasonable doubt that the defendant brandished the firearm.

In this case, submitting an interrogatory to the jury asking whether the firearm had been discharged necessarily would have generated an affirmative response, and the defendant

therefore would have received the same ten-year sentence on Count V. Because there is no gross disparity - or any disparity at all - between the sentence the defendant received and the sentence he would have received under *Alleyne*, he cannot satisfy Section 1B1.13(b)(6).[5]

### 3. Crime of violence.

For purposes of Section 924(c), a "crime of violence" is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) ("the elements clause"). When the defendant was tried, convicted, and sentenced, a crime of violence was also a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id*. § 924(c)(3)(B) ("the residual clause"). In *United States v. Davis*, 588 U.S. 445 (2019), the Supreme Court struck down the residual clause as "unconstitutionally vague." *Id*. at 470. The defendant correctly identifies *Davis* as a "change in the law," but applying *Davis* would not "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."

The defendant does not argue that none of the offenses charged in Counts I through IV are crimes of violence under the elements clause. Instead, he argues only that the offenses charged in Counts III and IV are not crimes of violence under the elements clause and that, due to the jury's failure to identify the underlying offense or offenses on which it based its guilty verdict on Count V, the Court is required to presume that the jury based its verdict only on Count III and/or IV. (Doc. 147 at 10, 15).

There is, however, no such presumption of a tainted verdict. In *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021), four of the defendant's five preceding counts of conviction were valid predicates to his conviction under Section 924(o) for conspiring to violate Section 924(c).

---

[5] The defendant correctly notes that the Court's upward departure was based in part on U.S.S.G. § 5K.2.2. (Doc. 147 at 10; Doc. 27 at 22; Doc. 41 at 6-9). The defendant does not argue that doing so implicates *Apprendi*, and it plainly does not. *E.g., United States v. Grady*, 18 F.4th 1275, 1292 n.16 (11th Cir. 2021) ("[T]here is no error under *Apprendi* when the defendant is not sentenced beyond the statutory maximum and district courts may still impose fact-based sentencing enhancements under an advisory guidelines system without violating the Sixth Amendment.") (internal quotes omitted).

*Id*. at 1281-82, 1284-85.  The defendant argued that, because the appellate court "cannot definitively rule out th[e] possibility" that "the jury relied on [the fifth, improper count of conviction] alone," his Section 924(o) conviction had to be vacated.  *Id*. at 1285.  The Eleventh Circuit disagreed, because the proper and improper predicates were so "inextricably intertwined" that the jury "could not have found" that the 924(o) conviction rested on the improper predicate without also finding that it rested on the proper predicates.  *Id*. at 1280, 1293.

What was true in *Granda* is even more clearly true here.  In *Granda*, the predicate offenses shared only a "tightly bound factual relationship," 990 F.3d at 1291, but in this case all of the predicate offenses are based on the *identical* facts, as there was but a single shooting incident at a single location at a single moment in time.  The jury could not possibly have found Counts III and IV to be predicate offenses without also finding Counts I and II to be predicate offenses.  As the defendant concedes that Counts I and II are crimes of violence under the elements clause, applying *Davis* cannot result in a gross disparity (or any disparity) between the ten-year sentence the defendant received on Count V and the ten-year sentence he would have received under *Davis*.

### III.  Policy Statements.

Even when extraordinary and compelling reasons for a sentence reduction exist, relief is statutorily prohibited unless the Court finds that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission …."  18 U.S.C. § 3582(c)(1)(A).  The Commission's policy statement includes the requirement that "the court determin[e] that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(a)(2).

The defendant's criminal record of violence is long.  At age fifteen, he threatened a victim with a handgun.  At seventeen, he hit his brother in the mouth.  The same year, he was associated with a complaint of shots fired.  At age eighteen, he entered the victim's residence, pointed an unregistered short-barreled shotgun at his face, and fought with the victim.  (*Id*. at 15).  This conduct led to the defendant's conviction for possession of an unregistered firearm, for which he served over three years.  (Doc. 27 at 12-15).  Barely three months after leaving prison on supervised release, the defendant committed the instant offenses, in which he shot Savage at least four times with at least seven bullets fired from a semi-automatic pistol at point-blank range

while Savage was trapped in the front passenger seat of a vehicle the defendant was driving, an offense the Court at sentencing described as a "brutal, inhumane act." (Doc. 41 at 8). As the Court noted at sentencing, "[a]ll of this shows [the defendant's] propensity toward violence," and throughout the criminal proceedings the defendant "has shown no remorse," up to and including sentencing. (*Id*. at 9). The Court recognizes that people can change, but the defendant has presented no basis on which the Court could conclude that the defendant is no longer a danger to the community. The defendant therefore does not satisfy the third requirement for compassionate release.

**IV. Section 3553(a).**

On the present record, the Court remains satisfied that the defendant's existing sentence is sufficient, but not greater than necessary, to satisfy the purposes set forth in Section 3553(a). The defendant therefore does not satisfy the fourth requirement for compassionate release.

**V. Conclusion.**

For the reasons set forth above, the defendant's motion for compassionate release is **denied**.

DONE and ORDERED this 2nd day of January, 2025.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE